IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHRISTOPHER ALAN ANDREWS                                                        PLAINTIFF

            v.            Civil No. 06-2064

JAIL NURSE CRYSTAL REED;
DR. TOM TINSMAN; SGT. RITTER;
SGT. TAULBEE; and CAPTAIN
MIKE CONGER, Jail Administrator                                                 DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds pro se and in forma pauperis.

Plaintiff is currently incarcerated in Fort Supply, Oklahoma. The events at issue in this lawsuit occurred while the plaintiff was incarcerated at the Sebastian County Detention Center. Specifically, plaintiff contends he was subjected to unconstitutional conditions of confinement and denied adequate medical care.

Defendants filed a summary judgment motion (Doc. 33). To assist plaintiff in responding to the motion, a questionnaire was propounded (Doc. 39).

Plaintiff filed a timely response to the questionnaire (Doc. 40). The summary judgment motion is before the undersigned for issuance of this report and recommendation.

Plaintiff's denial of medical care claim is duplicative of the claim asserted in *Andrews v. Atkinson, et al., Civil No.* 06-2073. The denial of medical care claims asserted in both cases involve the same period of incarceration at the Sebastian County Detention Center. The denial

-1-

of medical care claim will be separately addressed in a report and recommendation issued on a pending summary judgment motion in case no. 06-2073.

## Background

A warrant was issued for Andrew's arrest on a petition to revoke his suspended sentence on March 6, 2006. *Plaintiff's Response* (Doc. 26) (*hereinafter Resp.*) at ¶ 1. Andrews was arrested and booked into the Sebastian County Detention Center (SCDC) on April 26, 2006, on a petition to revoke his suspended sentence, a fugitive from justice charge, and an Arkansas Department of Correction (ADC) hold. *Id.* at ¶ 2. Andrews remained incarcerated at the SCDC until February 9, 2007. *Id.* at ¶ 43.

When Andrews was booked in, his personal property was inventoried. *Defts' Ex.* 1 at page 6; *Resp.* at ¶ 3. The inventory form indicates Andrews had no cash, a pair of glasses, three types of medication, a pair of shoes, and a knife. *Id.* The form does not list the type of medication. *Id.* However, Andrews states he told them what type of medication was in his property and wrote it down upon entering the detention center. *Resp.* at ¶ 3.

A medical questionnaire was completed as part of the booking process. *Resp.* at ¶ 4. Andrews indicated he had heart problems (three heart attacks), a head injury (his neck had been broken in 1995), bad knees, and mental illness (he was being treated at ACT in Tulsa). *Id.*

He indicated he was being treated by Dr. Bumbgardner and William Theripest at Associated Centers for Therapy in Tulsa. *Id.* at ¶ 5. Andrews stated he was taking Zoloft, Wellbutrin, and Serequel *Id.*

On an intake questionnaire Andrews indicated he was afraid to be placed in the general population because he took medication for post traumatic stress disorder. *Resp.* at ¶ 6(A). He stated he "freaked out" easily. *Id.* Andrews was not placed in general population. *Id.* at ¶ 6(B).

Andrews was told he would receive a new mattress that night but to take the piece of foam they were giving him for the time being. *Resp.* at ¶ 7(A). He maintains the foam had no covering and was stained. *Id.* at ¶ 7(B). He was also given a blanket and one set of clothing. *Id.* at ¶ 7(C).

Andrews signed a waiver of extradition on May 5th agreeing to return to Arkansas for trial on a theft of property charge. *Resp.* at ¶ 8(A). On May 10th, Andrews submitted a request asking to know when his next court date was. *Id.* at ¶ 8(B). In response, he was told he had no specific court date but that it would be at the call of the court. *Id.*

On May 19th, Andrews submitted a grievance complaining that his cell was overcrowded and asking that it be emptied down to two men per cell. *Resp.* at ¶ 9(A). In response, Sgt. Ritter told Andrews that because of his protection status in CC pod, he would remain where he was. *Id.* If he wanted to fill out a protection release, he was told he could do so. *Id.*

Andrews was dissatisfied with Ritter's response. *Resp.* at ¶ 9(B). Lt. Jackson also responded to the grievance. *Id.* She stated that on May 24th Andrews was asked if he would like to sign a PC release form and move to AA pod for pre-sentenced felons. *Id.* Andrews did not wish to do so. *Id.* Further, Lt. Jackson noted that Andrews was offered a cell in the segregation unit of his pod where he would have had a cell by himself with no lock-down restriction and he refused that offer. *Id.*

Andrews indicates he did move to the cell in the segregation unit of his pod. *Resp.* at ¶ 9(B). However, he states he was only there for one night. *Id.* He indicates once defendants learned of his lawsuit things went back to normal "with very little floor space." *Id.* Andrews indicates AA pod was more crowded than where he was. *Id.* at ¶ 9(C).

On May 19th, Andrews submitted a grievance complaining that medication was handed out by deputies rather than LPN's or RN's. *Resp.* at ¶ 10(A). Sgt. Ritter responded that the deputies would continue to pass out meds. *Id.*

Andrews was not satisfied with this response so Sgt. Taulbee responded to the grievance by telling Andrews that the deputies only assisted him in receiving medication that had been prescribed by the doctors or nurses. *Resp.* at ¶ 10(B). Andrews was told that he was able to see the directions for the medication on the cards and that when the medication was passed out both the deputy and he had to sign at the time the medication was given. *Id.* Andrews indicated he was receiving Serequel, Wellbutrin, and Zoloft. *Id.* at ¶ 10(C).

On May 19th, Andrews submitted a grievance about the mattresses being infested with germs. *Resp.* at ¶ 11. Andrews did not suffer any physical injury as a result of the mattress. He was given to sleep on. *Id.* at ¶ 11(B). He had a mattress or a bunk to sleep on each night. *Id.* at ¶ 11(C).

On May 21st, Andrews complained that he had not received the three grievances he submitted on May 19th back. *Resp.* at ¶ 12. In response, Sgt. Ritter told him to be patient and wait. *Id.*

On May 21st, Andrews complained that he had submitted an in forma pauperis form to Officer Dutton Friday morning and it was supposed to be returned to him Friday. *Resp.* at ¶ 13. Andrews stated he had not received it back yet. *Id.* In response, Sgt. Ritter told Andrews to be patient and wait. *Id.*

On May 21st, Andrews submitted a grievance form saying that he had asked Officer Sosbee at 8:00 p.m. on Friday, May 19th, for a grievance form and he had not brought him one. *Resp.* at ¶ 14. Sgt. Ritter responded that he would check into it. *Id.* After checking into it, Sgt. Ritter noted that Andrews had been provided with grievance forms. *Id.*

On June 3rd, Andrews complained that he had not received back a grievance he submitted on Sunday, May 28th. *Resp.* at ¶ 15. He said it was filled out correctly. *Id.* Sgt. Ritter responded there was no record of Andrews submitting a grievance on that date and he would have to resubmit it. *Id.*

Andrews complained again on June 4th that he had submitted a grievance on May 28th about overcrowding. *Resp.* at ¶ 16. He asked where it was. *Id.* He stated that he had other people sign the back. *Id.* Sgt. Ritter responded that he had looked at the grievances Andrews submitted and he found no such grievance. *Id.* Andrews was told to re-submit it. *Id.*

Andrews was asked to describe the cell he was housed in. *Resp.* at ¶ 16(B). He indicated it was: 8' by 10' in size; housed 5 to 6 inmates; had two bunks; had a toilet/sink combination; inmates were confined to the cell twenty-two hours each day; and he had access to a dayroom for recreation and for meals. *Id.*

Andrews indicates he did not receive a diet sufficient to maintain his health. *Resp.* at ¶ 16(C). If he stated his diet was insufficient, Andrews was asked to explain. *Id.* He did not explain. *Id.*

He was able to send and receive mail. *Resp.* at ¶ 16(D). He had access to a phone. *Id.* at ¶ 16(E). With respect to showers, Andrews indicates there were only two showers available and the inmates had only one hour out of their cells in which to take showers. *Id.* at ¶ 16(F). He indicates there were too many inmates for the two available showers. *Id.* In between showers, he had access to basic hygiene items such as soap and water. *Id.* at ¶ 16(G).

Although Andrews' grievances were not always resolved to his satisfaction, he was able to submit grievances. *Resp.* at ¶ 16(H). Andrews was asked whether he suffered any physical injury as a result of the overcrowded conditions. *Id.* at ¶ 16(I). He responded: "Yes." He then said: "A large bruse, (which is docmented) on my right leg from stubbling over someone in the middle of the night." *Id.*

On June 4th, Andrews submitted a grievance stating he asked Officer Freeman about soap, toilet paper, and toothpaste and Freeman stated he wasn't doing it today. *Resp.* at ¶ 17(A). Andrews also asked for a grievance and was told Freeman had until 7 p.m. to get it for Andrews. *Id.* Andrews stated when he asked for a grievance it should be brought to him shortly not 9 hours later. *Id.* Andrews asked that Freeman be told to do his job. *Id.*

In response, Sgt. Ritter stated the deputies have until the end of their shift to give out grievances. *Resp.* at ¶ 17(B). Andrews was informed he would be given the supplies. *Id.* He received the supplies. *Id.* at ¶ 17(C).

On June 6th, Andrews complained he was still cramped up in a two-man cell with four others. *Resp.* at ¶ 18(A). Sgt. Ritter responded that everyone in Andrew's pod was PC [protected custody] status and if he wanted to be released he could sign a PC release form. *Id.*

Andrews indicates he did not sign a PC release because there was no reason to. *Resp.* at ¶ 18(B). Andrews indicates the same conditions existed in AA pod. *Id.* Furthermore, he states a person with post-traumatic stress disorder does not get along well with a lot of people. *Id.*

On June 12th, Andrews complained that Dutton had received, read, and discussed Andrew's June 10th grievance. *Resp.* at ¶ 19. He complained about deputies not following procedure. *Id.* Sgt. Ritter responded that the grievance was not filled out correctly. *Id.* Next time Andrews was instructed to write in the space provided and on the back. *Id.* Sgt. Ritter also said he had previously answered Andrew's grievance. *Id.*

On June 12th, Andrews submitted a grievance complaining that he had been there a month and had not seen a doctor or nurse. *Resp.* at ¶ 20(A). He said he had signed a release form for them to receive his medical records. *Id.* He stated he had sent grievances and sick call slips in but got no response. *Id.* He stated he had been without his medication for a month. *Id.*

Sgt. Ritter responded that they had no record of any grievances about medical. *Resp.* at ¶ 20(B). If Andrews had any medical problems, he was instructed to fill out a medical slip. *Id.* Andrews knew that to obtain non-emergency medication treatment at the SCDC, an inmate must complete a written request for medical treatment. *Id.* at ¶ 22.

Andrews was asked to explain why none of the grievances he submitted prior to June 12th mentioned his being out of medication or his needing to see a doctor or nurse. He

-7-

responded: "All others we're distroyed by either Capt. Conger and, or Nurse Reed." *Resp.* at ¶ 20(C). *See also Resp.* at ¶ 21(B).

Andrews submitted a request for medical treatment on June 15th stating that he was having severe anxiety attacks and suffered from post traumatic stress disorder, schizophrenia, and severe depression. *Resp.* at ¶ 21(A). He was prescribed 100 mg. of Zoloft per Dr. Tinsman. *Id.*

Prior to June 15th, Andrews asserts he received no prescription medication. *Resp.* at ¶ 21(C). However, Nurse Reed noted on the medical treatment report dated June 15th that Andrews was running out of meds from the clinic in Tulsa and the Zoloft was ordered for Andrews. *Id.* at ¶ 20(D).

On June 21st, Andrews pled no contest to the petition to revoke his suspended sentence in the Sebastian County Circuit Court. *Resp.* at ¶ 23. On June 27th, Deputy Sowa reported that medications had been dropped off for Andrews and given to the supervisor. *Id.* at ¶ 24.

On June 27th, Andrews requested medical treatment stating that his mind was continually racing and he could not rest at night. *Resp.* at ¶ 25. He requested 600 mg of Serequel at night. *Id.* He also mentioned he was having nightmares and hearing voices. *Id.*

Andrews was seen by Dr. Tinsman who noted Andrews was seeking medication for mental illness. *Resp.* at ¶ 26(A). Andrews was diagnosed with depression with schizo affective features. *Id.* Dr. Tinsman prescribed Serequel and continued the Zoloft. *Id.* Another attempt was made to get a copy of Andrews' records from ACT. *Id.* at ¶ 26(B).

AO72A
(Rev. 8/82)

Andrews filed this lawsuit on May 31st. *Resp.* at ¶ 27. On July 6th, Andrews was seen by Dr. Tinsman and Nurse Reed for a follow-up appointment. *Id.* at ¶ 28. Dr. Tinsman diagnosed Andrews with "depression bipolar controlled." *Id.* Andrews was continued on his medication regime and was to be rechecked as needed. *Id.* Andrews was seen by Dr. Tinsman on July 12th and he re-ordered Andrews' Zoloft. *Resp.* at ¶ 29.

According to the SCDC medication logs, prior to the June 12th medical request, Andrews received Zoloft from May 6th to May 12th, *defts' ex.* 2 at pages 18-19 and *resp.* at ¶ 30, Wellbutrin from May 6th to May 14th and from June 1st to June 5th, *defts' ex.* 2 at pages 18-19 and *resp.* at ¶ 31, and Serequel from May 6th to June 3rd, *defts ex.* 2 at pages 18-19.

### Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

Defendants have now moved for summary judgment. They contend Andrews' allegations, even if taken as true for purposes of this motion, do not rise to the level of a constitutional violation. First, they point out he suffered no injury or adverse health consequence. Second, they contend temporary deficiencies and temporary living arrangements do not evidence the wanton and unnecessary infliction of pain necessary to constitute a violation of the Eighth Amendment.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*,

501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).

Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Andrews asserts he was subjected to the following unconstitutional conditions: overcrowded cells, *resp.* at ¶ 9(A); a foam mattress that had no covering and was stained and had germs, *resp.* at ¶ 8(A), ¶ 11(A); and an insufficient number of showers for the number of inmates given the amount of time for the inmates to shower, *resp.* at ¶ 16(F).

The summary judgment record establishes Andrews had a blanket and clothing. *Resp.* at ¶ 7(C). He suffered no physical injury as a result of sleeping on the mattress he was provided. *Id.* at ¶ 11(B). He had a mattress or a bunk to sleep on each night. *Id.* at ¶ 11(C). He had access to a day-room for a period of time each day. *Id.* at ¶ 16(B).

Although he was not always satisfied with the responses he received, he was able to submit grievances. *See Defts' Ex.* 3. While Andrews states he did not receive a diet sufficient to maintain his health, *resp.* at ¶ 16(C), he did not identify any inadequacies in the diet he

-11-

received and none of the grievances he submitted addressed the meals he received or any problems with the meals. *Defts' Ex.* 3.

He was able to send and receive mail. *Resp.* at ¶ 16(D). He had access to a phone. *Id.* at ¶ 16(E). Although his time was limited, he did have access to a shower each day and between showers had access to basic hygiene items such as soap and water. *Id.* at ¶ 16(F) & ¶ 16(G).

In *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994), the court noted that "[c]onditions of confinement . . . constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human needs such as food, warmth, or exercise. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.'" *Whitnack,* 16 F.3d at 957 (*quoting Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991)).

Andrews claim therefore fails as a matter of law because he has not identified a single identifiable human need that he was deprived of. There is no evidence that the "overcrowding led to deprivations of essential food, medical care, or sanitation, nor increased violence among inmates or [made] other conditions intolerable for prison confinement." *Patchette v. Nix*, 952 F.2d 158, 163 (8th Cir. 1991).

Andrews asserts he was injured because of the overcrowding. Specifically, on one occasion he stumbled over someone in the night and sustained a large bruise on his right leg. *Resp.* at ¶ 16(I). While Andrews may have stumbled because of the presence of other inmates

in his cell, this injury does not suggest that conditions were so intolerable as to violate the Eighth Amendment.

## Conclusion

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 33) be granted with respect to plaintiff's claim that he was subject to unconstitutional conditions of confinement. I further recommend that plaintiff's denial of medical care claim be dismissed as that claim is duplicative of the claim asserted in *Andrews v. Atkinson, et al., Civil No.* 06-2073. Both denial of medical care claims involve the same period of incarceration at the Sebastian County Detention Center. The denial of medical care claim will be separately addressed in a report and recommendation issued on a pending summary judgment motion in case no. 06-2073.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of August 2007.

/s/ *J. Marschewski*
 HON. JAMES R. MARSCHEWSKI
 UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)